The Memorandum Decision below is hereby signed.

Dated: May 12, 2008.



_S. Martin Teel Jr._

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                           )
                                )
REGINA ANQUIONETTE SPENCER,     )    Case No. 06-00314
                                )    (Chapter 7)
              Debtor.           )    **For Publication in West's**
                                )    **Bankruptcy Reporter**

<u>MEMORANDUM DECISION RE EFFECTIVE DATE OF DISMISSAL OF CASE</u>

The court entered an earlier order granting the United

States Trustee's motion under § 521(i)(2) of the Bankruptcy Code

(11 U.S.C.) to dismiss the case on the basis of 11 U.S.C.

§ 521(i)(1). The order, however, left open the issue of the date

on which the dismissal should be made effective. <u>In re Spencer</u>,

2006 WL 3820702 (Bankr. D.D.C. Dec. 22, 2006).

I

THE STATUTE AND THE FACTS OF THIS CASE

Section 521(i)(1) provides:

Subject to paragraphs (2) and (4) and notwithstanding
section 707(a), if an individual debtor in a voluntary case
under chapter 7 or 13 fails to file all of the information
required under subsection (a)(1) within 45 days after the
date of the filing of the petition, the case shall be
automatically dismissed effective on the 46th day after the
date of the filing of the petition.

Section 521(i)(2) (to which § 521(i)(1) is expressly made

subject) provides:

> Subject to paragraph (4) and with respect to a case
> described in paragraph (1), any party in interest may
> request the court to enter an order dismissing the
> case.  If requested, the court shall enter an order of
> dismissal not later than 5 days after such request.

Section 521(i)(3) (to which § 521(i)(1), through apparent

drafting error, is not expressly made subject, but to which

§ 521(i)(1) plainly is subject) and § 521(i)(4) (to which

§ 521(i)(1) is expressly made subject) provide:

> (3) Subject to paragraph (4) and upon request of
> the debtor made within 45 days after the date of the
> filing of the petition described in paragraph (1), the
> court may allow the debtor an additional period of not
> to exceed 45 days to file the information required
> under subsection (a)(1) if the court finds
> justification for extending the period for the filing.

> (4) Notwithstanding any other provision of this
> subsection, on the motion of the trustee filed before
> the expiration of the applicable period of time
> specified in paragraph (1), (2), or (3), and after
> notice and a hearing, the court may decline to dismiss
> the case if the court finds that the debtor attempted
> in good faith to file all the information required by
> subsection (a)(1)(B)(iv) and that the best interests of
> creditors would be served by administration of the
> case.

The debtor did not timely move under § 521(i)(3) to enlarge the

45-day deadline of § 521(i)(1).  After the United States Trustee

moved for dismissal of the case, the chapter 7 trustee failed to

move in a timely manner under § 521(i)(4) for a determination

that the grounds specified by § 521(i)(4) required that the case

ought not be dismissed.  Dismissal was mandatory once it was

2

determined that not all of the documents required by § 521(a)(1)
had been filed by the 45-day deadline.[1]  Accordingly, I issued an
order dismissing the case, but I deferred ruling on when
dismissal was to be treated as having occurred, and invited the
views of interested parties regarding the issue.  The United
States Trustee and Cynthia A. Niklas, the standing chapter 13
trustee for this district, filed responses regarding the issue.

II

Section 521(i) addresses the consequences of a failure of an
individual debtor to file the papers required by 11 U.S.C.
§ 521(a)(1) within the 45-day period after the date of his filing
of a petition commencing a case under chapter 7 or 13 of the
Bankruptcy Code.  Specifically, § 521(i)(1) directs that if the
45-day period has not been enlarged under § 521(i)(3), and if the
debtor has failed to comply with § 521(a)(1) at the end of day 45
of the case, then "[s]ubject to paragraphs (2) and (4) . . ., the
case shall be automatically dismissed effective on the 46th day

---

[1]  I need not address whether the court, on its own
initiative under 11 U.S.C. § 105(a), may direct the parties to
show cause why the case ought not be dismissed by reason of
§ 521(i)(1).  Compare Finney v. Smith (In re Finney), 992 F.2d
43, 45 (4th Cir. 1993) (court on its own initiative could address
whether a Chapter 11 case should be dismissed under 11 U.S.C.
§ 1112(b) even though that provision only mentions dismissal "on
request of a party in interest") with In re Jackson, 348 B.R. 487
(Bankr. S.D. Iowa 2006) (court may not dismiss a case sua sponte
based on § 521(i)(1)).  Resolution of that issue ought not affect
how § 521(i) is interpreted with respect to the issue before the
court, which only arises when dismissal actually occurs.

after the date of the filing of the petition."

The command of § 521(i)(1) does not mean that when
§ 521(i)(1) is triggered, the case **stands** automatically dismissed
as of the 46th day, for the command is expressly made subject to,
and its meaning clarified by, a procedure under § 521(i)(2) which
requires that not later than 5 days after a party in interest
requests the entry of an order dismissing a case described in
§ 521(i)(1), the court shall enter "an order dismissing the
case,"[2] (not an order, analogous to one under 11 U.S.C. § 362(j),
confirming that the case was already dismissed).[3]  Moreover,
§ 521(i)(4)--permitting a trustee to move to make § 521(i)(1)
inapplicable via a motion filed within the 5-day period of
§ 521(i)(2)--would be internally inconsistent with § 521(i)(1) if
under § 521(i)(1) dismissal actually occurs on day 46.  See CFCU
Community Credit Union v. Swimelar, 2008 WL 189929 (N.D.N.Y. Jan.

---

[2]  As stated in In re Parker, 351 B.R. 790, 801 (Bankr. N.D.
Ga. 2006), "[i]f the case had already been 'automatically
dismissed,' this language would be mere surplusage."  Moreover,
the phrase "subject to" means that § 521(i)(2) is a limitation on
§ 521(i)(1), and that dismissal by reason of § 521(i)(1) is not
to occur except pursuant to the procedures set forth in §
521(i)(2).  See In re Jackson, 348 B.R. 487, 498 n.25 (Bankr.
S.D. Iowa 2006).  Due to the "subject to" language of
§ 521(i)(1), a case is not dismissed under § 521(i) unless and
until a party in interest moves for dismissal under
§ 521(i)(2).  Id. at 497-98.

[3]  Both § 362(j) and § 521(i) were added to the Bankruptcy
Code by the same statute, thus reinforcing the conclusion that
Congress did not intend that the § 521(i)(2) order of dismissal
would merely confirm that the case was already dismissed.

18, 2008).[4]

"Statutory construction . . . is a holistic endeavor."

United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,

Ltd., 484 U.S. 365, 371 (1988).  A court must "follow the

cardinal rule that a statute is to be read as a whole since the

meaning of statutory language, plain or not, depends on context."

King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) (citations

---

[4] Section 521(i)(4) contemplates that even after the 45th
day specified by § 521(i)(1) has passed without the required
documents having been filed, the court in certain circumstances
may decline to dismiss the case when a request has been made
under § 521(i)(2) for entry of a dismissal order.  A party's
right under § 521(i)(2) to obtain an order dismissing the case is
expressly made subject to § 521(i)(4).  In turn, § 521(i)(4)
provides that notwithstanding § 521(i)(1), in certain
circumstances the court may decline to dismiss the case "on the
motion of the trustee filed **before the expiration of the
applicable period of time specified in paragraph** (1), **(2)**, or (3)
. . . ."  (Emphasis added.)  The 5-day time period specified in
§ 521(i)(2) for the court to enter an order dismissing the case
is thus a window of opportunity for a trustee to file a timely
motion under § 521(i)(4) in certain circumstances.  If the case
already stood dismissed as of the 46th day, and a request for
entry of an order of dismissal under § 521(i)(2) is necessarily
filed on or after the 46th day, the trustee's purported right
under § 521(i)(4) to file a motion requesting that the court
decline to dismiss the case during the period set forth in
§ 521(i)(2) would be rendered meaningless.

omitted).[5]  It is thus necessary to interpret 521(i)(1) in light

of other provisions of the Bankruptcy Code, and to strive for an

interpretation of § 521(i)(1) whose effects are compatible with

the Bankruptcy Code as a whole.  See Timbers of Inwood Forest,

484 U.S. at 371.  Moreover, a statutory provision ought not be

interpreted in a fashion that eviscerates or renders mere

surplusage another provision of the same statute.  Citizens Bank

of Md. v. Strumpf, 516 U.S. 16, 20 (1995) (statute will not be

held to destroy itself); Dunn v. CFTC, 519 U.S. 465, 472 (1997)

(courts should avoid interpretation of a provision that renders

another provision mere surplusage); Ratzlaf v. United States, 510

U.S. 135, 140-141 (1994) (same).

Because § 521(i)(1) cannot be construed in isolation without

considering § 521(i)(2) and (4), the language in § 521(i)(1) that

"the case shall be automatically dismissed" means that the court

has no discretion not to dismiss the case: dismissal is

automatically required, with an order of dismissal to be entered

---

[5]  To illustrate its point, the Court in King, 502 U.S. at
221, quoted with approval the following passage from NLRB v.
Federbush Co., 121 F.2d 954, 957 (2d Cir. 1941)(L. Hand, J.):

> Words are not pebbles in alien juxtaposition; they have
> only a communal existence; and not only does the
> meaning of each interpenetrate the other, but all in
> their aggregate take their purport from the setting in
> which they are used . . . .

A court "should adopt that sense of words which best harmonizes
with context and promotes [the] policy and objectives of [the]
legislature."  King, 502 U.S. at 221 n.10.

under § 521(i)(2) within 5 days of a request being made for

dismissal based on § 521(i)(1) having been triggered.  If the

statute contemplated that the case is to stand automatically

dismissed effective upon § 521(i)(1) being triggered on the 46th

day, no order of dismissal would be necessary.  A case does not

stand dismissed unless and until the order of dismissal

contemplated by § 521(i)(2) is entered, and the date of entry of

the order of dismissal is the date on which the case is

dismissed.

III

Even when read in isolation from the provisions in companion

paragraphs in § 521(i) to which it is made subject, the command

in § 521(i)(1) that "the case shall be automatically dismissed"

can reasonably be read as a directive to the court requiring the

court to dismiss the case if the debtor fails to satisfy the

filing requirements of § 521(i)(1).  When read that way,

dismissal is automatic in the sense that no showing of cause is

required and the court no longer has discretion to deny dismissal

if the debtor failed to satisfy the filing requirements of

§ 521(i)(1).  When the language "shall be automatically

dismissed" is thus understood as a directive to the court

requiring that the court dismiss the case without any concomitant

showing of cause, the following clause "effective on the 46th day

after the date of the filing of the petition" is most naturally

7

understood as setting the point in time at which the court
becomes subject to that directive.  Thus, the 46th day is not the
date on which the dismissal itself is effective, but rather, the
date, effective as of which the court is divested of the
discretion to deny a request for dismissal.

When a statute, rule, or court order intends that a case is
to stand automatically dismissed without the necessity of a court
order upon an event occurring, language is used making that
clear.  See Swint v. Smith, 134 S.E.2d 595, 596 (Ga. 1964)
(discussing state statute which provided that "any suit filed in
any of the courts of this State in which no written order is
taken for a period of five years the same **shall automatically
stand dismissed** . . . .") (emphasis added); Clark v. Ganson, 87
S.E. 670, 670 (Ga. 1916) (holding that "where the order
sustaining the demurrer allowed a definite time within which an
amendment might be filed, and provided that, if no such amendment
was filed within the time allowed, '**the suit to stand dismissed**,'
if no amendment was filed, the suit was automatically
dismissed.") (emphasis added); Fed. R. Civ. P. 41(a) (providing
in Rule 41(a)(1), at the time of enactment of § 521(i), that a
civil action "may be dismissed by the plaintiff **without order of
court** (i) by filing a notice of dismissal [by a specified
deadline], or (ii) by filing a stipulation of dismissal . . . ."
(emphasis added)).

8

In comparison to such clear statutory expressions that a case stands dismissed on a specified date, § 521(i)(1) does not use language that clearly would deem the case actually dismissed on the 46th day after the filing of the petition.  Had Congress intended that when § 521(i)(1) is triggered, the case is actually dismissed on the 46th day, the statute could have provided that "the case is dismissed effective on the 46th day."  In other provisions of the Bankruptcy Code, that is how Congress expressed the idea of an event occurring without the necessity of an order of the court.  See 11 U.S.C. § 362(h) ("the stay . . . is terminated"); 11 U.S.C. § 365(p)(1) ("If a lease of personal property is rejected or not timely assumed by the trustee . . ., the leased property is no longer property of the estate and the stay under section 362(a) is automatically terminated."); 11 U.S.C. § 365(p)(3) (providing in relevant part that "[i]f the lease is rejected, the stay under section 362 and any stay under section 1301 is automatically terminated . . . ."); 11 U.S.C. § 521(a)(6) ("the stay . . . is terminated"); 11 U.S.C. § 551 ("Any transfer avoided under [certain sections] . . . is preserved for the benefit of the estate . . . .").  Presumably, Congress intended a different meaning when it used the words "shall be automatically dismissed" in § 521(i)(1).

9

Finally, one other aspect of the language of § 521(i)(1) itself strongly suggest that the phrase "automatically dismissed" must be viewed in the sense of there being no discretion not to dismiss the case upon the specified event occurring, not as meaning that the case stands dismissed upon the specified event occurring.   Section 521(i)(1) overrides the requirement of showing that cause for dismissal exists, and this suggests that "automatic dismissal" under § 521(i)(1) is directed to when a court is deprived of discretion not to dismiss the case, not when the court's order dismissing the case is to be effective.

Ordinarily, dismissal of a case under chapter 7 of the Bankruptcy Code is governed by 11 U.S.C. § 707(a), which provides that the court "may dismiss a case under this chapter only after notice and a hearing **and only for cause**" (emphasis added), and § 521(i)(1) (through the clause "notwithstanding section 707(a)") expressly dispenses with the strictures of § 707(a) and the requirement of a showing of cause.  This reinforces the view that § 521(i)(1) deals with depriving the court, after day 45 of the case, of any discretion not to dismiss the case.

Similarly, dismissal of a case under chapter 13 of the Bankruptcy Code (the other type of case to which § 521(i) is applicable) is generally governed by 11 U.S.C. § 1307(c), which requires notice and a hearing, and a showing of cause.  When the circumstances specified by § 521(i)(1) exist in a case,

10

§ 521(i)(1) must be viewed as a more specific statutory provision

than § 1307(c) and as making dismissal mandatory notwithstanding

§ 1307(c) (even though § 1307(c) is not expressly mentioned in

§ 521(i)(1)).[6]

Thus, for a case to be dismissed on the ground that

§ 521(i)(1) has been triggered, the debtor is not permitted to

argue that the failure timely to file the documents required by

§ 521(a)(1) constitutes insufficient cause for dismissal.  It is

in the sense of there being no requirement for a showing of

cause, that, as stated by § 521(i)(1), effective as of day 46

after the petition filing date, the case "shall be automatically

dismissed" when documents required by § 521(a)(1) have not been

filed by day 45.

IV

A court ought not give a Bankruptcy Code provision an

interpretation that would produce a result inconsistent with

---

[6]  Although 11 U.S.C. § 1307(c)(9) provides that only the
United States Trustee may request a dismissal for failure to file
"the information required by paragraph (1) of section 521 [which
BAPCPA re-numbered § 521(a)(1)]," that would not diminish the
observation that § 521(i)(1), once triggered, deprives the court,
in both chapters 7 and 13, of any discretion not to dismiss the
case, and that it is in this sense that § 521(i)(1) uses the term
"automatically dismissed."  Section 521(i)(1) and § 1307(c)(9)
can be harmonized by treating § 521(i)(1) as dealing with
automatic dismissals after day 45 of the case requiring no
showing of cause, and treating § 1307(c)(9) as dealing with a
dismissal for cause (for example, based on a failure to file
schedules by day 15 of the case as required by Fed. R. Bankr. P.
1007(c)).

11

important principles embodied in other provisions of the
Bankruptcy Code, or with significant state or federal interests.
See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 243-46
(1989) (citing Midlantic Nat'l Bank v. N.J. Dep't of Envtl.
Protection, 474 U.S. 494, 500-502, 505 (1986); Kelly v. Robinson,
479 U.S. 36, 50 (1986)).  Courts also "will not read the
Bankruptcy Code to erode past bankruptcy practice absent a clear
indication that Congress intended such a departure."  Pa. Dep't
of Pub. Welfare v. Davenport, 495 U.S. 552, 563 (1990); Cohen v.
De La Cruz, 523 U.S. 213, 219-20 (1998).  In addition,
"interpretations of a statute which would produce absurd results
are to be avoided if alternative interpretations consistent with
the legislative purpose are available."  Griffin v. Oceanic
Contractors, Inc., 458 U.S. 564, 575 (1982).  A statute's
seemingly plain meaning may be disregarded if literal application
of the statute would lead to a result that is demonstrably at
odds with legislative intent.  Id. at 571.  "In such cases, the
intention of the drafters, rather than the strict language,
controls."  Ron Pair Enters., 489 U.S. at 242 (citation omitted).
Applying those doctrines of statutory construction leads to the
conclusion that a § 521(i)(2) dismissal order should dismiss a
case as of the date of the entry of the order, not retroactive to
day 46 after the petition filing date.  Interpreting § 521(i)(1),
when triggered, as causing a case to stand dismissed on day 46

would be inconsistent with prior law under which dismissals are effective only upon entry of an order of dismissal, and would lead to results that are absurd and whose substantive effects are inconsistent with important policies embodied in § 521(i) itself and with other provisions of the Bankruptcy Code and federal law.

### A.

Creditors need certainty regarding whether a case has been dismissed, and that certainty cannot be achieved if a case dismissed by reason of § 521(i)(1) stands dismissed as of day 46 of the case instead of as of the date of entry of the order of dismissal.  Section 521(i)(2) contemplates that the court must first determine that the debtor failed to comply with § 521(a)(1) before it can treat dismissal as automatically required.  Pending the court's determination whether § 521(i)(1) has been triggered, there can be doubt beforehand whether the case has actually been automatically dismissed.  As already noted, the court may decline to dismiss the case when a trustee successfully invokes § 521(i)(4), and there can also be uncertainty whether the debtor failed to comply with § 521(a)(1):

- If dismissal is sought because the movant contends that payment advices were not filed as required by § 521(a)(1)(B)(iv), the debtor might respond that he received no payments from an employer within the 60 days before the date of the filing of the petition,

thereby giving rise to a factual dispute.

- Factual and legal issues may exist with respect to whether the debtor's debts were principally consumer debts such that he was required to file a Form 22. <u>See</u> <u>In re Reavis</u>, 2007 WL 2219519 (Bankr. N.D. Okla. Jul. 30, 2007); <u>In re Adibi</u>, 2007 WL 1556838 (Bankr. S.D. Tex. May 24, 2007).[7]

Creditors ought not be viewed as clairvoyant regarding how a court might rule on such questions. It would be absurd if the case would stand as already dismissed prior to the court's determining such issues. Congress did not likely intend to

---

[7] There will be other cases in which it will be a close call whether § 521(i)(1) applies, and in which the applicability of § 521(i)(1) might escape early detection. For example, a debtor with no priority debts might neglect to check the "None" box on Schedule E ("Creditors Holding Unsecured Priority Claims"), and thus have arguably failed to comply with the requirement of filing by day 45 a schedule of such liabilities. Section 521(i)(2) has not abrogated the requirement of the filing of a motion under Fed. R. Bankr. P. 9013 and service of the motion on the trustee and the debtor under this court's Local Bankr. R. 9013-1 when an order of dismissal is sought under § 521(i)(2). <u>See</u> <u>In re Wojda</u>, 371 B.R. 656, 659 (Bankr. W.D.N.Y. 2007) (Rule 9013 applied to require service of a motion). It is inherent in § 521(i) (and under basic concepts of due process) that the trustee and the debtor are entitled to notice so that they will have an opportunity to show that § 521(i)(1) was not triggered (that is, to show that the movant is in error in contending that documents required by § 521(a)(1) were not timely filed), and so that the trustee will have an opportunity to file a motion under § 521(i)(4), within the five-day period prescribed by § 521(i)(2), to attempt to persuade the court that it is required under § 521(i)(4) to decline to dismiss the case.

inflict on creditors the harms that could arise from treating
§ 521(i)(2) dismissals as effective retroactively to the 46th day
when there was uncertainty whether § 521(i)(1) would actually be
held applicable.

B.

Adding to the absurdity of subjecting creditors to such
uncertainty, there can be substantial delay before the court
adjudicates that § 521(i)(1) was triggered and that the case must
be dismissed.  A request under § 521(i)(2) for dismissal of the
case may be filed months after the 46-day mark of § 521(i)(1).
See, e.g., In re Calhoun, 359 B.R. 738, 741 (Bankr. E.D. Mo.
2007) (case dismissed January 17, 2007, effective March 28, 2006,
the 46-day mark under § 521(i)(1));  In re Cloud, 356 B.R. 544
(Bankr. N.D. Okla. 2006) (request filed 131 days after the 46-day
mark of § 521(i)(1)).[8]  Moreover, a court's ruling that the
debtor complied with § 521(a)(1) would be subject to appellate
review, see In re Svigel, 2007 WL 1747117 (B.A.P. 10th Cir. June

---

[8]  The facts of the instant case similarly illustrate the
delay that may occur before an order is entered under § 521(i)(2)
dismissing a case based on § 521(i)(1).  The 46th day after the
filing of the debtor's petition fell on October 24, 2006.  The
United States Trustee's motion to dismiss based on § 521(i)(1)
was filed on November 28, 2006, thirty-five days later.  The
United States Trustee did not file a separate request to the
clerk to present the motion to dismiss to the court for
adjudication within five days after the filing of the motion as
contemplated by § 521(i)(2).  As a result, the motion was not
given expedited treatment, and the court's order of dismissal was
entered on December 26, 2006, sixty-three days after the 46th day
after the filing of the debtor's petition.

18, 2007), so that if an appellate court reversed a ruling that
there was compliance with § 521(a)(1), a judicial decree that
§ 521(i)(1) was triggered might come very late in the case.[9]

C.

The commencement of a bankruptcy case places a temporary
halt (through the automatic stay of 11 U.S.C. § 362(a)) on
collection activity and stays the race of diligence in which
creditors often engage in order to prevail in collection efforts
vis-à-vis other creditors, thereby assuring equality of treatment
of creditors.  See Checkers Drive-In Rests., Inc. v. Comm'r of
Patents and Trademarks, 51 F.3d 1078, 1082 (D.C. Cir. 1995);
Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.), 810 F.2d
270, 277 (D.C. Cir. 1987); see also In re Sherman, 441 F.3d 794,
814 (9th Cir. 2006).  The automatic stay of § 362(a) terminates
at "the time the case is dismissed."  11 U.S.C. § 362(c)(2)(B).
If dismissal based on § 521(i)(1) is effective only upon entry of
an order of dismissal that is noticed to all creditors
simultaneously, this assures that creditors can all

---

[9]  Even with close monitoring, there would be many cases in
which the issue of whether § 521(i)(1) was triggered would not be
spotted until late in the case.  In any event, Congress did not
direct the courts to devote resources to monitoring whether a
debtor has complied with § 521(i)(1), and § 521(i)(2) implies
that the issue is generally to be addressed via an interested
party filing a motion for entry of an order dismissing the case.
This court's interpretation of the statute avoids the necessity
to adopt an elaborate procedure such as the one adopted in In re
Beacher, 358 B.R. 917 (Bankr. S.D. Tex. 2007), to attempt to make
clear at any early stage whether § 521(i)(1) has been triggered.

simultaneously resume the race of diligence.  If, instead, dismissal based on § 521(i)(1) were made effective on day 46 after the petition filing date, this would result in creditors being put to the burden of monitoring the case to ascertain whether the debtor failed to comply with § 521(a)(1) so that they can resume collection activity as soon as possible.  Subjecting creditors to that burden could not have been intended by Congress.  Moreover, some creditors may be in a superior position to ascertain whether the debtor has complied with § 521(a)(1).  For example, a debtor's employer-creditor will know whether the debtor received payment advices.  Making the dismissal effective only upon the date of entry of the order of dismissal assures that creditors are not put to that unnecessary burden of monitoring the debtor's compliance with § 521(a)(1), and assures equality of treatment of creditors.

### D.

Furthermore, making the dismissal effective on day 46 of the case would be inconsistent with longstanding bankruptcy practice that even when it is plain that dismissal of a case is required, the automatic stay is not lifted under 11 U.S.C. § 362(c)(2)(B) unless and until the court enters an order dismissing the case. See Fish Mkt. Nominee Corp. v. Pelofsky, 72 F.3d 4, 6 (1st Cir. 1995) ("[T]he stay under section 362(a) itself expired as soon as the judgment dismissing the chapter 11 case was entered. . . ."

17

(citations omitted)).  In another provision added by the statute
that enacted § 521(i), Congress required that when a case is
subject to mandatory dismissal by reason of the bar of 11 U.S.C.
§ 109(g), an order of dismissal must first be entered before the
automatic stay is treated as terminated based on such required
dismissal.  <u>See</u> 11 U.S.C. § 362(b)(21) (providing exception to
automatic stay for some creditors in such a case, but not other
creditors); <u>In re Hawkins</u>, 340 B.R. 642 (Bankr. D.D.C. 2006).
Congress gave no indication that in enacting § 521(i)(1) pursuant
to the same statute, it intended to take an approach at odds with
longstanding bankruptcy practice and with the approach of
§ 362(b)(21) of treating a case as pending despite a provision
that made the debtor ineligible to be a debtor in the bankruptcy
case.

E.

By reason of the delay that can arise before a case is
dismissed pursuant to § 521(i)(2), a holding that such a
dismissal is retroactive to day 46 will in some instances
frustrate the protections that Congress intended to accord
creditors via 11 U.S.C. §§ 362(c)(3) and 362(c)(4), provisions
enacted by the same statute as enacted § 521(i).  Those
provisions limit the availability of the automatic stay of 11
U.S.C. § 362(a) in any case of an individual debtor under chapter
7, 11, or 13, if a case of the debtor was "pending within the

18

preceding 1-year period but was dismissed" (§ 362(c)(3)) or two
or more cases of the debtor were "pending within the previous
year but were dismissed" (§ 362(c)(4)).  If an order of dismissal
of a case is entered under § 521(i)(2) a year after the specified
day 46, but the dismissal were treated as effective retroactively
to that 46th day, that would result in the case not counting for
purposes of §§ 362(c)(3) and 362(c)(4) as a case that was pending
within the prior one-year period.  In other words, making the
dismissal retroactive to day 46 after the petition filing date
would rob creditors of part (or, in our example, all) of the one-
year period within which a new case would trigger the protections
of §§ 362(c)(3) or 362(c)(4), as the case may be.  Section
521(i)(1) ought not be interpreted in a manner that eviscerates
the protections intended to be accorded creditors by §§ 362(c)(3)
and 362(c)(4).

F.

During the period between the 46-day mark of
§ 521(i)(1) and the date on which an order is entered under
§ 521(i)(2) dismissing the case, uncertainty will exist regarding
the trustee's authority to retain possession of and utilize
property of the estate pursuant to 11 U.S.C. §§ 363 and
521(a)(4).  For example, unless the court orders otherwise,
dismissal revests in the debtor the debtor's property that had
become property of the estate.  11 U.S.C. § 349(b)(3).  If, when

§ 521(i)(1) is triggered, the dismissal is effective on day 46 after the date of the petition filing, but the trustee refuses after that date to let the debtor have access to the property because he believes that § 521(i)(1) was not triggered, is the trustee liable for damages to the debtor when the court later rules that § 521(i)(1) was indeed triggered and orders the case dismissed?  Congress did not likely intend to wreak such havoc regarding the trustee's authority over assets of the estate.

G.

Various orders may have been entered in the case after day 45 of the case and before the entry of an order of dismissal under § 521(i)(2).  If the case is treated as having been dismissed effective as of the 46-day mark of § 521(i)(1), those actions may be rendered improper.  As explained in In re Adibi, 2007 WL 1556838 at *2 (Bankr. S.D. Tex. May 24, 2007), when § 521(i) is read as requiring the dismissal to be retroactive to day 46:

> the statute [would] present[] dangerous ambiguities and substantial peril for debtors, for creditors, for bankruptcy trustees, and for entities who dealt with the trustees (such as purchasers of estate assets). If . . . the Court [does] not determine (early on) whether [§ 521(i)(1) was triggered], then all proceedings in the case after the 45th day [would be] subject to challenge.  If . . . no one raised the question until several years into the administration of the case, and if the Court determined years later [that § 521(i)(1) was triggered] and therefore the case had been dismissed automatically by the statute several years earlier [effective on day 46], the jurisdiction of the court and all acts of administration of the

20

estate after the 45th day would be in question.

Accordingly, if a chapter 7 trustee sold property of the estate

after the 45th day, in the mistaken belief that the debtor had

fully complied in a timely manner with § 521(a)(1), the sale

order, entered after the case stood dismissed, would be void if

dismissal under § 521(i)(2) is retroactive to day 46, and the

void character of the sale might not be discovered until months

later.  In the meantime, the purchaser may have incurred

substantial expenses relating to the property, and, in any event,

would incur substantial expenses addressing the effect on his

purchase of the case having stood dismissed effective on day 46

after the filing of the petition.[10]  Such uncertainty and added

expense regarding the effectiveness of a trustee's sale of

property would only lead to a decrease in the prices parties are

willing to pay trustees for estate property.[11]  Congress did not

likely intend to wreak such havoc.

---

[10]  There is great doubt that the purchaser could obtain an
order under § 349(b)(3) directing, retroactively, that the
dismissal at the specified day 46 did not re-vest the property in
the debtor, and that the purchaser could obtain an order
upholding the validity of the sale order (even though issued in
an already dismissed case).  Even if such orders could be
obtained, the pursuit of entry of such orders would entail
attorney fees and other expenses.

[11]  This would also be contrary to the policy of assuring
the security of titles to real property.  See BFP v. Resolution
Trust Corp., 511 U.S. 531, 544 (1994).  To paraphrase BFP, 511
U.S. at 544, the title of every piece of realty sold by a
bankruptcy trustee after the 45th day after an individual debtor
filed his petition would be under a cloud.

H.

Treating the case as dismissed as of the 46-day mark of
§ 521(i)(1), notwithstanding that the order of dismissal under
§ 521(i)(2) was only entered many weeks later, would in some
circumstances frustrate the intended legislative purpose of 26
U.S.C. § 6503(h), a provision that Congress plainly intended to
work in a coordinated fashion with the Bankruptcy Code.  Under
that provision, Congress intended that the Secretary of the
Treasury have at least 60 days after the automatic stay of 11
U.S.C. § 362(a) terminates under 11 U.S.C. § 362(c)(2)(B) within
which to make an assessment of taxes that was not time-barred on
the date of the commencement of the case.  If a case described in
§ 521(i)(1) is treated as standing dismissed at the 46-day mark
even though the order of dismissal is not entered until more than
60 days after the passage of the 46-day mark, in such cases, the
Secretary would be without notice of dismissal until after the
window for pursuing the assessment had closed.  This is contrary
to the Congressional intent to permit the Secretary 60 days
within which to assess the tax, and demonstrates how an
interpretation of the statute that would render all § 521(i)(2)
orders effective as of day 46 is not only in tension with the
Bankruptcy Code, but is at direct odds with Congressional intent
as expressed in statutes intended to work in harmony with the
Bankruptcy Code.

22

V

In re Fawson, 338 B.R. 505 (Bankr. D. Utah 2006), was the
first decision that interpreted § 521(i)(1), when triggered on
day 46 after the petition filing date, as resulting in any
dismissal order under § 521(i)(2) being effective retroactively
to that day 46.  The court stated that:

> Automatic means "acting or operating in a manner
> essentially independent of external influence or
> control."  Section 521(i)(1) does not contemplate any
> independent action by the Court or any other party--the
> case is merely dismissed by operation of the statute
> itself.  There is no ambiguity.

Id. at 510 (footnote omitted).  However, as already demonstrated,
the phrase "shall be automatically dismissed" is ambiguous
because susceptible to the different meaning ascribed to it by
this court.  Moreover, Fawson fails to address the points upon
which this court relies in favor of treating the case as not
standing dismissed on day 46 whenever § 521(i)(1) is triggered,
but only once an order of dismissal is entered.[12]

_____

[12]   The same court that decided Fawson later supported its
interpretation of § 521(i)(1) by reasoning in In re Wilkinson,
346 B.R. 539, 543 n.17 (Bankr. D. Utah 2006), that "[i]t would be
patently inappropriate for this Court to assist in the
prosecution of a dismissed case over which it has no
jurisdiction."  That observation, however, follows from the
erroneous premise that when § 521(i)(1) is triggered, the case
stands dismissed without the necessity of an order.  Under this
court's interpretation, the case does not stand dismissed, and
the court necessarily has jurisdiction over the case, until an
order is entered dismissing the case.

Decisions of some other courts appear to have made holdings
in agreement with the Fawson view of the statute,[13] or to have
expressed in dicta agreement with that view.[14]  However, those
decisions have added no analysis beyond what Fawson articulated,
and in most of those decisions there is no indication that the
issue of retroactivity was addressed by the parties.

_____

[13]  See Warren v. Wirum, 378 B.R. 640, 647 (N.D. Cal. Nov.
14, 2007) (case stood dismissed by operation of law without
necessity of order of dismissal); In re Hall, 368 B.R. 595, 599
n.4 (Bankr. W.D. Tex. 2007); In re Conner, 2006 WL 1548620
(Bankr. N.D. Fla. May 16, 2006); In re Williams, 339 B.R. 794
(Bankr. M.D. Fla. 2006).  See also In re Turner,
2008 WL 852486 (Bankr. D. Colo. Mar. 24, 2008); In re Richardson,
2008 WL 270263 (Bankr. E.D. Tex. Jan. 30, 2008) (court entered
order evidencing automatic dismissal of case); In re Winston,
2007 WL 2385095 (Bankr. E.D. Cal. Aug. 16, 2007); In re Reyes,
2007 WL 338066, at *2 (Bankr. E.D. Tenn. Jan. 31, 2007) (case was
automatically dismissed "by operation of law" on the specified
day 46 "irrespective of whether a party in interest requested
entry of an order of dismissal pursuant to § 521(i)(2)"); In re
Calhoun, 359 B.R. 738, 741 (Bankr. E.D. Mo. 2007); In re Ott, 343
B.R. 264, 266-67 (Bankr. D. Colo. 2006) (characterizing §
521(i)(1) as "self-executing" and agreeing with Fawson, 338 B.R.
at 510); In re Cloud, 356 B.R. 544, 545 (Bankr. N.D. Okla. 2006);
In re Smith, 352 B.R. 729, 730 (Bankr. W.D.N.Y. 2006); In re
Rubio, 2006 WL 2792213 (Bankr. S.D. Tex. Sept. 25, 2006).

[14]  See In re Brickey, 363 B.R. 59, 66 (Bankr. N.D.N.Y.
2007) (court appears to assume that a § 521(i) dismissal is
effective on day 46 after the filing date of the petition, but
holds that under § 521(i)(4), when applicable, the court may
annul that dismissal);  In re Dienberg, 348 B.R. 482, 483 (Bankr.
N.D. Ind. 2006) (suggesting that an order under § 521(i)(2) is a
"comfort order" doing "nothing beyond confirming a state of
affairs that already exists") (footnote omitted); In re Walker,
2006 WL 4671832 (Bankr. D. Md. July 20, 2006); In re Duffus, 339
B.R. 746, 748 (Bankr. D. Or. 2006) ("Where the Congress intended
that a case be dismissed automatically, and without the need for
a motion, it said as much.  See § 521(i)(1)." (footnote
omitted)); In re Muhaimin, 343 B.R. 159, 166 (Bankr. D. Md.
2006).

VI

In determining when a dismissal under § 521(i)(1) should be made effective, it is unnecessary to resolve an issue upon which the courts are split regarding whether, when a debtor invokes § 521(i)(1) in an attempt to escape unfavorable consequences of the bankruptcy case, the automatic dismissal requirement of § 521(i)(1) can be avoided by retroactively ordering that the documents required by § 521(a)(1)(B) need not be filed.  Section 521(a)(1)(B) imposes its filing requirements "unless the court orders otherwise."  Some courts have held that if the case does not already stand dismissed after § 521(i)(1) was triggered, and is, instead, not dismissed until an order is entered dismissing the case, a court has authority to invoke § 521(a)(1)(B) to prevent § 521(i)(1) from being successfully invoked by a debtor to escape adverse developments in her case.  See In re Parker, 351 B.R. at 800-02 (court directed under § 521(a)(1)(B) that certain missing documents were not required to be filed under § 521(a)(1)(B), and thereby prevented a dismissal requested by the debtor under § 521(i)(1) that would have worked a substantial injustice on creditors); In re Jackson, 348 B.R. at 499-500; In re Warren, 2007 WL 1079943 (Bankr. N.D. Cal. Apr. 9, 2007), rev'd sub nom. Warren v. Wirum, 378 B.R. 640 (N.D. Cal. 2007); In re Withers, 2007 WL 628078 (Bankr. N.D. Cal. 2007); In re Fileccia, 2007 WL 1695387 (Bankr. M.D. Tenn. June 6, 2007); In re Ackerman,

25

374 B.R. 65 (Bankr. W.D.N.Y. 2007).[15] Even if a dismissal under
§ 521(i)(1) does not occur until the entry of an order of
dismissal, § 521(i)(1) could be read as subject to only
paragraphs (2) through (4) of § 521(i), and if the order under
§ 521(a)(1)(B) excusing non-filing of required documents was not
entered by day 45 of the case, then such an order (because not
issued pursuant to § 521(i)) might come too late to excuse the
non-filing, and <u>Parker</u> and similar decisions would be

---

[15] A court has no such express power to direct that the
debtor is not required to file the list of creditors required by
§ 521(a)(1)(A), but as a practical matter a case in which the
debtor does not file a list of creditors is dismissed well before
day 46 after the petition filing date.  The clerk cannot give
notice of the commencement of the case and of the meeting of
creditors without the list of creditors.  Notice of the meeting
of creditors generally must be mailed out no later than the 20-
day mark of the case in chapter 7 and the 30-day mark of the case
in chapter 13. <u>See</u> Fed. R. Bankr. P. 2002(a)(1) (minimum number
of days of notice required); <u>see also</u> Fed. R. Bankr. P. 2003(a)
(latest date for holding meeting of creditors).  Accordingly, the
court addresses a debtor's failure to file a list of creditors
well prior to the 46-day mark of the case.

incorrect.[16]   I need not resolve that issue.

But if, under the other possible interpretation of
§ 521(i)(1), the case has already been dismissed on day 46 by
virtue of § 521(i)(1) having been triggered, there would be no
question that the court is precluded from retroactively excusing
the non-filing, and the debtor would succeed in escaping the
throes of the bankruptcy case.   See Warren v. Wirum, 378 B.R. at
647 (because the court believed that the case already stood
dismissed on day 46 pursuant to § 521(i)(1) based on the non-
filing of certain payment advices required by § 521(a)(1)(B)(iv),
the court concluded that it could not retroactively undo the
dismissal by invoking § 521(a)(1)(B) to excuse the non-filing of
the payment advices); Rivera v. Miranda, 376 B.R. 382, 385-86
(D. Puerto Rico 2007).   Accordingly, interpreting § 521(i)(1),
when triggered, as causing the case to stand dismissed on day 46

---

[16]   Even assuming that In re Parker and similar decisions
were properly decided, the holding of those decisions should be
limited to cases of abuse.   When a dismissal would not result in
an abuse of the system, a denial of dismissal, once § 521(i)(1)
has been triggered, properly should be confined to § 521(i)(4)
which is limited to a case in which the debtor in good faith
attempted to file required payment advices.   In other words, it
does not appear that Congress intended that a court would excuse
non-filing, once § 521(i)(1) is triggered on day 46, when the
debtor is the party requesting after day 45 to be excused from
filing documents required by § 521(a)(1).   Granting a debtor's
request to be relieved of filing requirements under § 521(a)(1)
after § 521(i)(1) has been triggered would be inconsistent with
this court's interpretation of § 521(i)(1), once that provision
is triggered, as requiring no showing of cause to warrant
dismissal of the case.

would deprive the bankruptcy court of any chance that it could

invoke "the broad authority granted to bankruptcy judges to take

any action that is necessary or appropriate 'to prevent an abuse

of process' described in § 105(a) of the Code" noted in Marrama

v. Citizens Bank of Massachusetts, --- U.S. ----, ----, 127 S.Ct.

1105, 1112, 166 L.Ed.2d 956 (2007).  I prefer an interpretation

of § 521(i)(1) that leaves open the possibility that the court

might be able to prevent an abuse of the bankruptcy system, and

under my interpretation of when a dismissal order under § 521(i)

is effective, there is at least an argument (which I need not

resolve now) that the effects of § 521(i)(1) can be avoided via a

retroactive order excusing non-filing of documents required by

§ 521(a)(1)(B).

But all of the foregoing discussion of the In re Parker and

Warren v. Wirum competing line of cases is academic.  Even if §

521(i)(1), once triggered, deprives the court of discretion to

prevent dismissal by excusing non-filing of documents even in

cases when the debtor invokes § 521(i)(1) to attempt to avoid

adverse developments in the case, that still would not answer the

question regarding when a dismissal on § 521(i)(1) grounds should

be treated as occurring.

VII

The responses filed regarding the issue either support my

conclusion or fail to persuade me to a contrary conclusion.  In

her response, Cynthia A. Niklas, the standing chapter 13 trustee

for this district, urges that dismissal under § 521(i) should not

be made retroactive to the 46th day, stating:

> A retroactive dismissal would . . . potentially create
> absurd results and have far ranging un[in]tended
> consequences.  Retroactive Court Orders would bring
> into question the validity and the enforceability of
> Court orders and with it, the credibility of the Court.
> Retroactive Court Orders might also shorten or
> eliminate the requisite 180-day dismissal period with
> prejudice to the benefit of the debtor and to the
> detriment of creditors.  Retroactive Court Orders would
> also create havoc in Chapter 13 plan distributions to
> creditors made pursuant to a confirmed plan, to the
> prejudice of creditors and with a financial windfall
> for debtors.

Response of Cynthia A. Niklas at ¶ 5.[17]  This mirrors the

observation in In re Parker, 351 B.R. at 801:

> The statute . . . was primarily designed to prevent
> abuse of the bankruptcy system so that parties were not
> allowed to receive the benefits of bankruptcy without
> performing the requisite duties.  However, interpreting
> "automatic dismissal" to mean that a case ceases to be
> pending by the mere passage of time without a court
> order of dismissal does not further the purposes of the
> statute and may cause chaos and confusion since there
> is no readily ascertainable way to determine whether or
> not a case has been dismissed.

The United States Trustee "submits that making the 521(i)

---

[17]  In her response, the chapter 13 trustee urges that the
court direct that payment advices be submitted to the case
trustee and not filed with the court (because the existence *vel
non* of payment advices prevents certainty in administering the
requirements of § 521(i)), and that the court itself dismiss a
case on the 46th day when schedules and the statement of
financial affairs have not all been filed by the 45th day.  Even
if the court were to attempt to monitor cases for § 521(i)
compliance, there would be the occasional non-compliant case that
would escape detection at the 46th day.

dismissal effective as of the 46th day is the appropriate remedy

in this case and that to the extent anomalies may arise in other

or future cases, the court retains sufficient authority to

address those situations on a case-by-case basis."  Response of

U.S. Trustee at 3.  The United States Trustee elaborates that:

> dismissal should be made effective as of day 46, unless
> there is some overriding issue which the court can
> address at that time.  As identified in Parker, there
> are tools and judicial doctrines available for the
> courts to prevent abuse and protect the integrity of
> the judicial system.  In this particular case, the
> United States Trustee is unaware of any circumstance
> which should prevent a straightforward application of
> the statute.

Response of U.S. Trustee at 4.  However, if, as the United States

Trustee concedes by citing Parker, a court retains the power

under § 521(a)(1)(B) to prevent § 521(i) from being effective

even once it appears to have been triggered on the specified day

46 by reason of the debtor's failing to file one of the required

documents, then parties in interest cannot know whether the case

has been dismissed under § 521(i) until the court issues an order

of dismissal.  Congress could not have intended such uncertainty.

Moreover, as demonstrated by the discussion in part IV of this

decision, the untoward consequences of making the dismissal

retroactive to day 46 after the petition filing date will not

always be immediately known.  The untoward consequences of a

retroactive dismissal (what the United States Trustee calls

anomalies arising from such a dismissal) are not reflected solely

30

in the bankruptcy case docket.   It is far preferable to adopt an

interpretation of the statute which acts prophylactically to

prevent any such anomalies from arising in the first place, and

which consistently treats the dismissal date as the date of entry

of the order of dismissal instead of injecting the uncertainty of

treating the dismissal date as chameleon-like depending upon the

unique circumstances of each case.

VIII

An order follows deeming the dismissal to have occurred as

of the date on which the court entered its order of dismissal.

[Signed and dated above.]

Copies to: Office of U.S. Trustee; Cynthia A. Niklas.